UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| CURTIS SIMMONS, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | |
| v. | ) ) ) | 2:11-cr-00063-GZS-2 2:13-cv-00293-GZS |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Petitioner Curtis Simmons pled guilty in March 2012 to one count of conspiracy to possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. The Court subsequently sentenced Petitioner to a term of imprisonment of 114 months followed by three years of supervised release. (Judgment, ECF No. 156.) Petitioner filed an appeal, but voluntarily dismissed the appeal. Petitioner then filed the pending motion pursuant to 28 U.S.C. § 2255, in which motion Petitioner alleges ineffective assistance of counsel in connection with the sentencing. (Motion, ECF No. 184.) Specifically, Petitioner maintains that counsel failed to advocate that the drug quantity should have been lower to account for the legitimate prescriptions that he and his wife, co-defendant Allison Simmons,[1] had for oxycodone. Petitioner also claims that his counsel was ineffective by failing to advocate for a downward departure for the mental and physical abuse that Petitioner's father inflicted on him when he was a child. The government requests a summary dismissal. The recommendation is that the Court deny Petitioner's request for relief, and dismiss Petitioner's motion.

---

[1] Co-defendant Allison Simmons is also known as Allison Simmons-Murphy. (Superseding Indictment, ECF No. 44.)

# I. FACTS AND PROCEDURAL HISTORY

In Count I of the superseding indictment, the government charged that from March to October 2010, Petitioner and his wife knowingly and intentionally conspired with other persons to distribute and to possess with intent to distribute oxycodone. (Superseding Indictment, ECF No. 44.) Count II, in which the government alleged that Petitioner and his wife knowingly and intentionally possessed with intent to distribute oxycodone, was eventually dismissed on the government's motion. (Judgment at 1-2.) After a competency hearing, which included the presentation of an independent psychological evaluation, the Court found Petitioner competent to stand trial. (Order, ECF No. 96; Minute Entry of Hearing, ECF No. 99.) Following an evidentiary hearing on Petitioner's motion to suppress, the Court affirmed the recommended decision to deny the motion. (Order, ECF No. 123.)

Thereafter, Petitioner changed his plea to guilty, conditioned on his appeal of the denial of his motion to suppress. (Conditional Plea, ECF No. 129.) In connection with the plea, the government represented that if the case were to proceed to trial, the government would prove beyond a reasonable doubt that Petitioner and his wife acquired oxycodone pills in Florida and transported them to Maine for further distribution. (Prosecution Version at 1, ECF No. 126.) According to the government, the evidence would establish that a search warrant that was executed on August 20, 2010, at a trailer in which Petitioner, his wife, and another defendant in a related case were sleeping, yielded approximately 671 pills and over $20,000 in United States currency. (*Id.*) Petitioner was arrested on state charges and taken into custody. (*Id.*)

The government also asserted that on October 14, 2010, agents met Petitioner's wife as she exited a plane at Portland International Jetport, searched her bags with her consent, and found 520 30-mg oxycodone pills in her bags. (*Id.* at 2.) In the days preceding the search of Petitioner's

wife's luggage at the airport, Petitioner had participated in a series of phone calls with his wife that included the following: Petitioner referred to himself as a "nervous wreck;" she told him that she had a "huge tampon in" and was "very uncomfortable;" and he responded, "I know. Don't say nothing." (*Id.* at 1-2.)

During the colloquy at the hearing on the change of plea, Petitioner told the Court that based on his personal knowledge, the prosecution version was true. (Plea Hearing Tr. at 14-15, ECF No. 176.) Petitioner's counsel then represented that Petitioner disagreed with the prosecution's statement that Petitioner had admitted to selling pills to various persons. (*Id.* at 15.) Counsel told the Court that he believed that even without that admission there was a factual basis for the plea. (*Id.*) The Court concluded that there was a factual basis for the plea. (*Id.*) The Court then accepted Petitioner's conditional guilty plea. (ECF Nos. 129, 130.) In this motion, Petitioner does not challenge the plea.

The revised presentence investigation (PSI) report states that Petitioner was born in 1961, that Petitioner had no high school diploma or GED, and that in the August 20, 2010, search of the trailer occupied by Petitioner, his wife, and Linda Cardenales, who is a defendant in a separate case, agents found the following items:

- 611 30-mg oxycodone pills in a glass jar in the bedroom that Petitioner and his wife occupied;
- 20 30-mg oxycodone pills in the purse of defendant Cardenales;
- 40 30-mg pills in an envelope in the room of defendant Cardenales;
- 8 marijuana plants growing in the back yard;
- a loaded shotgun and two boxes of ammunition in a bedroom closet;
- $20,579 in United States currency in the bedroom that Petitioner and his wife occupied;

3

- $720 in United States currency in another room in the trailer; and
- One drug ledger with two pages of notes showing prior sales on one of the pages of 1,262 30-mg oxycodone pills and 200 80-mg oxycodone pills, and prior sales on the other page of 500 30-mg oxycodone pills and 120 80-mg oxycodone pills.

The PSI report also revealed that in the search of Petitioner's wife and her luggage at the Portland International Jetport on October 14, 2010, agents found 520 30-mg oxycodone pills, of which 193 were in a condom and 327 in various pill boxes. All of the pills were included in Petitioner's drug calculation at sentencing. Authorities later learned that the pills were to be distributed by Petitioner's associates, with the proceeds to be used to post bail for Petitioner in a related state case. Investigators also subsequently found Petitioner's bank records, which showed deposits between June and August 2010 in the amount of $68,000.

> With respect to the drug calculation, the PSI report provided:
>
> For the purpose of drug calculations, the Probation Office will use the following: the number of pills seized at the time of the search warrant, <u>671, 30 mg Oxycodone pills</u>; the total number of pills listed in the drug ledger, <u>1,762, 30 mg Oxycodone pills</u> (1,262 + 500) and <u>320, 80 mg Oxycodone pills</u> (200 + 120); and the number of pills seized at PIJ, <u>520, 30 mg Oxycodone pills</u>. That results in a total of 2,953, 30 mg Oxycodone pills and 320, 80 mg Oxycodone pills. Together, those convert to 114.2 grams of Oxycodone (2,953 pills X 30 mg = 88.6 grams and 320 pills X 80 mg = 25.6 grams). It is also noted that, while currency (such as the $20,579 in ¶3 or the bank deposits shown in ¶5 ) is often converted to drug quantity to more accurately reflect the scale of the drug trafficking activity, that will not be done in this case to avoid possible double-counting with the drug quantities from the drug ledger. Pursuant to Application Note 10 of U.S.S.G. §2D1.1, the 114.2 grams of Oxycodone from this case must be converted to its marijuana equivalent (6,700 grams of marijuana/1 gram of Oxycodone), which results in a total of 765,140 grams, or **765.14 kilograms of marijuana equivalent**.

The drug quantity calculation thus included all pills found in both searches, and the pills that were reflected in the ledger. However, the cash and bank deposits were not included in the drug quantity calculation in order to avoid double counting.

Based on the 2011 United States Sentencing Guidelines Manual, the total offense level was calculated in the PSI report as follows: base offense level of 30; two-level increase for possession of a shotgun kept loaded and near a large quantity of drugs and drug proceeds; a three-level decrease for acceptance of responsibility for pleading guilty, expressing remorse, and assisting authorities; a total offense level calculated to be 29. Petitioner had eleven prior convictions, five of which did not produce criminal history category points. The six prior convictions that were counted produced a criminal history score of four. Petitioner's criminal history category was calculated to be III. In addition to the sentencing level calculation, the PSI report describes abuse by Petitioner's father when Petitioner was a young boy, and relates that Petitioner's parents divorced when he was five years old, due primarily to his father's abuse of the family.

In his sentencing memorandum, Petitioner included the drug quantity argument that Petitioner subsequently waived in the sentencing hearing, but now attempts to resurrect in his section 2255 motion. (Sentencing Memorandum, ECF No. 151.) In the memorandum, Petitioner argued that the drug quantity in the PSI report should be lowered to account for his and his wife's legitimate prescriptions. He suggested two alternative calculations to lower the drug quantity. The first and, he argued, the preferable alternative would lower the quantity by the amount of drugs legitimately prescribed to him and his wife over the entire seven-month conspiracy. (Sentencing Memorandum at 1-2.) Petitioner maintained that his prescription would reduce the quantity by 180 30-mg pills per month over seven months, for a total reduction of 1,260 pills. Petitioner further argued that his wife's prescription would yield a reduction of 240 30-mg pills per month over seven months, for a total of 1,680 pills. Based on Petitioner's calculation, the total reduction for the legitimate prescriptions of Petitioner and his wife would have been 2,940 (1,260 + 1,680 = 2,940). The corresponding marijuana equivalency would have been reduced from 765.14

5

kilograms to 174.2 kilograms, and the corresponding base offense level would have been reduced from 30 to 26. (*Id.*) This is the drug quantity argument that Petitioner now asserts in his section 2255 motion. (Motion at 19-20.) [2]

The second alternative presented in Petitioner's sentencing memorandum suggested that because Petitioner and his wife could each lawfully possess the number of pills equivalent to a one-month prescription, the drug quantity should have excluded the number of pills in a one-month prescription for Petitioner, a one-month prescription for his wife at the time of the search of their residence, and the equivalent of another one-month prescription for his wife at the time of the airport search. This approach would have resulted in a reduction of 180 30-mg pills for Petitioner, and a reduction of 480 (2 x 240 = 480) 30-mg pills for Petitioner's wife. The corresponding marijuana equivalency would have been reduced from 765.14 kilograms to 632.48 kilograms, and the corresponding base offense level would have been reduced from 30 to 28. (Sentencing Memorandum at 3.) In the sentencing memorandum, Petitioner conceded that this was the more reasonable of the two alternative calculation methods. (*Id.*) While Petitioner also agreed that one could reasonably conclude that the drug quantities reflected in the ledger were distributed rather than used personally (*Id.* at 3.), Petitioner did not concede that the drug ledger accurately reflected the drug quantities actually sold. (*Id.* at n.2.)

Because Petitioner presented the Court with two alternative means of determining the drug quantity, in his sentencing memorandum, Petitioner requested a base offense level of 26 or 28. Additionally, Petitioner advocated for a three-level reduction for the assumption of responsibility,

---

[2] In support of his motion, Petitioner evidently argues that the drug quantity should be reduced because he obtained $13,000 legitimately through a separate court judgment. Petitioner filed an affidavit by which he makes this assertion. Petitioner also attached to his filing a document that he describes as a pharmacy record of his prescription for oxycodone and asks the Court for the assistance of counsel to procure his wife's pharmacy records. (Reply, ECF No. 198.)

6

but acknowledged that the Court may impose a two-level increase for possession of a firearm. (*Id.* at 4.) Petitioner recognized that the calculation could yield a base offense level of 28 and a total offense level of 27 which, when combined with a criminal history category of III, would result in a sentencing range of 87 to 108 months. (*Id.* at 4.) In the sentencing memorandum, Petitioner requested a 48-month sentence. (*Id.* at 5.)

At the sentencing hearing, Petitioner waived the drug quantity argument and agreed to a base offense level of 30. (Sentencing Tr. at 4-5, ECF No. 177.) In his colloquy with the Court at sentencing, Petitioner told the Court that he had received the PSI report, reviewed it with counsel, and was aware that counsel was not objecting to the PSI report. (*Id.* at 3-4.) Petitioner, through counsel, maintained an objection to the gun enhancement, but did not present evidence concerning the gun enhancement. (*Id.*)

In recommending a sentence "in the middle of the range" (Sentencing Tr. at 8), the government argued that the fact that Petitioner "arrang[ed] for the next load" of drugs while he was a pretrial detainee on the charges in this case was a particularly egregious aspect of the case. (*Id.* at 7.) The government noted that the sentence was reasonable because despite Petitioner's eleven prior convictions, Petitioner did not receive more than four criminal history points due to the cap under the guidelines, and he did not receive any enhancement for the portion of the offense that occurred while he was detained because the guidelines do not apply an enhancement for offenses during pretrial detention. (*Id.*)

Although Petitioner did not argue in his sentencing memorandum or at the hearing for a downward departure due to the childhood abuse that Petitioner asserts that he experienced, in his allocution, Petitioner spoke about his father's abuse of him as a child. He said, "[t]his is a horrible memory, but I know that it is no excuse." (*Id.* at 9) Petitioner attributed his offense to his drug

7

addiction, explaining that while he had a lifetime problem with drugs, he suffered a back injury and depression that contributed to his addiction. (*Id.* at 10.) At the hearing, counsel reiterated Petitioner's request for a sentence of 48 months. (*Id.* at 20-21.)

At the conclusion of the sentencing hearing, the Court observed that despite Petitioner's numerous prior convictions, he had never received a significant prison sentence and he had "gained nothing from all the previous contacts with the criminal justice system." (*Id.* at 23.) Petitioner's involvement in drugs was "a money-making proposition" even when it meant the loss of the custody of his son. (*Id.* at 24.) The Court found a base offense level of 30, increased by two levels for the gun enhancement, and reduced by three levels for acceptance of responsibility, for a total offense level of 29. (*Id.* at 22.) The Court also found a criminal history category of III, which, when combined with a total offense level of 29, resulted in a guideline range of from 108 to 135 months. (*Id.*) The Court's sentence included a term of imprisonment of 114 months, and a term of supervised release of three years. (*Id.* at 24-25.)

Although Petitioner filed a notice of appeal (ECF No. 158.), the First Circuit ordered that the appeal be voluntarily dismissed upon Petitioner's unopposed motion. (*United States v. Simmons*, No. 12-1963 (1st Cir. Mar. 6, 2013). The First Circuit docket includes an affidavit filed by Petitioner's counsel, in which affidavit counsel represented that he had clearly communicated to Petitioner that "there were no viable grounds to appeal his sentence or the Trial Court's denial of his Motion to Suppress." Petitioner's filing also includes Petitioner's statement by affidavit that counsel clearly communicated his assessment of the case to Petitioner, and that Petitioner understood that there were no appellate issues for a direct appeal. Petitioner stated that he did not want to appeal pro se, and asked to have his appeal dismissed with prejudice.

## II. DISCUSSION

### A. Standard of Review

Pursuant to 28 U.S.C. § 2255(a), a prisoner in custody under a federal sentence may move to vacate his sentence on four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994) (quoting section 2255). Although the fourth category is "rather general," it is only implicated "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Id. (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The burden is on the section 2255 movant to make out a case for section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).

A habeas petition is not a substitute for an appeal. *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Id.* An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the movant shows that counsel's representation fell below an objective standard of reasonableness and prejudiced the movant's defense. *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

To succeed on an ineffective assistance of counsel claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697.

As for the "cause" test, the court must be "fairly tolerant" of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 446 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of government witnesses. *Turner*, 699 F.3d at 584. In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those

allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 56 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)).

B. **Analysis of Petitioner's Assertions**

1. **Petitioner's Assertion That Legitimately-Prescribed Drugs Should Have Been Excluded from the Calculation of Drug Quantity**

Petitioner asserts in his section 2255 motion that counsel "completely abandoned the adversarial process" at sentencing.[3] In support of this argument, Petitioner argues that counsel's withdrawal of the drug-quantity objection that had been asserted in the sentencing memorandum constituted ineffective assistance of counsel. More specifically, Petitioner contends that by failing to exclude the legitimate prescriptions from the calculation of the drug quantity, the Court "inadvertently utilized incorrect conversions and unreliable information in sentencing . . . ." (Motion at 16-17, 19.) Petitioner maintains that counsel's reason for not challenging the drug quantity at sentencing - counsel's concern that Petitioner would lose the 3-point reduction for acceptance of responsibility - was not well-founded.

"A party waives a right when it makes an intentional relinquishment or abandonment of it." *United States v. Ciocca*, 106 F.3d 1079, 1085 (1st Cir. 1997) (quotation marks omitted). "Typically, a waived claim is dead and buried; it cannot thereafter be resurrected on appeal." *United States v.*

---

[3] The government argues that any allegations that Petitioner makes "in the unsworn portion" of the petition should be summarily dismissed because those allegations are unsworn. (Response at 20 n.8.) The government cites *United States v. LaBonte*, 70 F.3d 1396 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997), in which the First Circuit held that a section 2255 petition was fatally defective because the petitioner did not present his factual allegations under oath. *Id.* at 1413. In *LaBonte*, the Court noted that the petitioner had submitted an "unsworn memorandum." *Id.* Here, Petitioner signed a form petition (also referred to as a motion) under the statutory alternative to the oath. (Motion at 13.) *See* 28 U.S.C. § 1746. Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings requires that the section 2255 motion "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." The form petition provides that additional pages may be attached to the petition if necessary to state the claims. The standard form that Petitioner used states: "For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds." (Motion at 4). Because the form itself states that additional pages may be added, it is logical to conclude that the additional pages should be considered to have been incorporated in the petition by reference and signed under penalty of perjury. A true separate filing might require a different analysis, but in this case, the government's objection is to an attachment that is actually part of the petition itself.

*Eisom*, 585 F.3d 552, 556 (1st Cir. 2009). Petitioner's free-standing claim of a drug quantity error is procedurally defaulted because he waived the issue at sentencing, and it was not addressed in the appeal.

To overcome the procedural default, Petitioner must show both "cause" for the default and "actual prejudice." *See Berthoff*, 308 F.3d at 127-28. Petitioner claims ineffective assistance as the cause for the default, but he has failed to demonstrate deficient performance by counsel. First, had counsel challenged the drug quantity, Petitioner's sentence could have increased given that the government could have attempted to increase the drug quantity by including some portion of the cash, the bank deposits, the marijuana plants, or the historical sales.[4] Furthermore, Petitioner did not produce either in the presentencing process or at the sentencing copies of any prescriptions that he contends authorized him and his wife to possess some of the pills. Without this proof, counsel reasonably could have been concerned that engaging in a debate over the issue might have resulted in the loss of the 3-point reduction for acceptance of responsibility.

The record establishes that the parties and the Court reasonably determined the approximate number of pills involved. Petitioner's counsel had reason to be concerned that the government could have made a persuasive argument that the drug quantity was greater than the quantity that the parties used for purposes of calculating the sentencing range. The fact that the drug quantity might be viewed as an approximation also does not support an ineffective assistance

---

[4] The government contends that by its calculation, the base offense level could have been 32, the total offense level could have been 31, which would have increased the guideline range from a range of 108 to 135 months to a range of 135 to 168 months. (Response at 19.) The government asserts that at a street level price of $1 per milligram, or $30 per 30-mg oxycodone pill, the $89,299 in cash ($20,579 in cash seized from Petitioner's room + $720 cash seized from another room + $68,000 in deposits = $89,299) would convert to 2,976.63 pills (89,299/30 = 2,976.63), which equates to 89.3 grams of oxycodone (2,976.63 x .03 = 89.3) and 598.31 kilograms of marijuana equivalent (1 gram oxycodone equates to 6.7 kilograms marijuana equivalent, thus 89.3 x 6.7 = 598.31). (Response at 19 n.5.) USSG § 2D1.1 cmt 8(D). The government asserts that the eight marijuana plants convert to .8 kilograms of marijuana equivalent (1 marijuana plant equates to .1 kilograms of marijuana). USSG § 2D1.1(c) n.(E). Adding both of these to the drug quantity calculation would have increased it from 765.14 kilograms of marijuana equivalent to 1,355.54 kilograms of marijuana equivalent, which would have led to a base offense level of 32 or higher if historical sales had also been included. (Response at 19.)

12

of counsel claim. *See United States v. Santos Batista*, 239 F.3d 16, 21 (1st Cir. 2001) (noting that the Court will uphold an "approximation as long as it represents a reasoned estimate of quantity") (quotation marks omitted). In short, Petitioner has not overcome the strong presumption that dropping the objection to the drug quantity was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

### 2. Petitioner's Assertion That The Drug Quantity Included Double Counting of Drugs

Petitioner argues that the Court "double counted relevant conduct at the time of sentencing in that the drug ledgers and the deposits that were converted into drugs were for the same relevant conduct." (Motion at 4.) Petitioner's argument is unsupported by the record and thus is without merit. The record establishes that the parties and the Court consciously did not consider the cash and bank deposits in order to avoid even the possibility of "double counting."

### 3. Petitioner's Assertion That Counsel Should Have Advocated for a Downward Departure for Abuse

Petitioner contends that counsel was ineffective because he failed to request "a downward departure for extraordinary physical and mental abuse." (Motion at 23-24.) Preliminarily, because Petitioner failed to raise the issue on appeal, Petitioner is procedurally defaulted from raising the issue in this motion unless he can demonstrate ineffective assistance of counsel (i.e., cause and actual prejudice). At the hearing, counsel offered several justifications for a downward departure, including the fact that Petitioner started taking oxycodone due to an injury and became addicted, and that Petitioner had already spent two years in jail during which time he was rehabilitated. (Sentencing Tr. at 18-21.) Counsel could reasonably have determined that an explanation for his involvement with drugs, and his rehabilitation or potential for rehabilitation were more persuasive arguments for a downward deviation than Petitioner's allegation of abuse that occurred approximately 40 years earlier and which abuse was nearly impossible to corroborate. Furthermore, because Petitioner informed the

13

Court of the abuse during his allocution, and because the information was included in the PSI report, the Court had the information to consider the information when imposing the sentence.

Petitioner, therefore, has failed to demonstrate any basis upon which one could conclude that his counsel's decision not to advocate directly for a deviation as the result of the alleged abuse was outside "the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). In addition, Petitioner has not offered any facts upon which one could conclude that the outcome of sentencing would have been different had counsel requested a downward departure on the basis of Petitioner's past abuse by his father. *Strickland*, 466 U.S. at 694.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases, and the recommendation is that the Court dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2255, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
March 31, 2014                                     U.S. Magistrate Judge